UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OMAR ABDELWAHAB                                                  PLAINTIFF

VS.                             CIVIL ACTION NO. 3:09CV41TSL-JCS

JACKSON STATE UNIVERSITY                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Jackson State University (JSU) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Omar Abdelwahab, who is now proceeding in this cause pro se, has filed no response in opposition to the motion, and the time for responding has now passed. Having fully reviewed JSU's motion, supporting memorandum and accompanying attachments, the court concludes the motion is well taken and should be granted.

Plaintiff, a practicing Muslim, was employed at JSU as a residence hall receptionist from March 2003 until his termination in June 2008. He has filed the present lawsuit against JSU asserting religious discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1983. Specifically, plaintiff alleges that one of the requirements of his Muslim faith is that he study the Koran and pray at certain times of the day and night, including from 2:00 a.m. to 4:00 a.m. He contends that JSU regularly scheduled him to work the midnight shift, from 12:00 a.m. to 8:00 a.m., and failed to make a

reasonable accommodation that would allow him to meet his religious obligations, such as by scheduling others to work the midnight shift. In addition, plaintiff alleges he was subjected to retaliation for filing an EEOC charge in October 2007 complaining of religious discrimination.

Under Title VII, an employer must "reasonably accommodate" the "sincerely held religious beliefs" of its employees. See 42 U.S.C. §2000e(j).[1] To establish a prima facie case of religious discrimination, plaintiff must show that: (1) he has a *bona fide* religious belief that conflicted with an employment requirement; (2) the employer was informed of that belief; and (3) he was discharged for failing to comply with the conflicting employment requirement. Weber v. Roadway Exp., Inc., 199 F.3d 270, 273 (5th Cir. 2000). In its motion, JSU maintains that plaintiff cannot establish any of these requirements. Addressing each element in turn, JSU first argues that notwithstanding plaintiff's allegations herein, it is clear from the evidence of record that plaintiff had no *bona fide* religious belief that conflicted with an employment requirement. In this vein, although plaintiff alleges that he has always been a Muslim and devoutly practiced

---

[1] Plaintiff has purported to sue under both Title VII and § 1983. Plaintiff has no cognizable claim against JSU under § 1983, as JSU, an arm of the state, has Eleventh Amendment immunity from such claim. See Washington v. Jackson State Univ., 532 F. Supp. 2d 804, 814 (S.D. Miss. 2006) (holding that JSU is arm of the state); Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1051, 1053 (5th Cir. 1988) ("The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983.").

Islam, JSU has presented evidence that at the time of his application for employment, plaintiff was well aware that he would be expected to work the midnight shift, having been expressly informed of this requirement in his employment interview by Vera Jackson, JSU's Director of Resident Life, and in the job listing for the position, which recited that "a willingness to work between the hours of 12:00 through 8:00 a.m. and availability to work flexible schedule are required." Plaintiff voiced no objection to this requirement, and accepted the job on the referenced terms. And, for more than three years, plaintiff worked the midnight shift when scheduled to do so without complaint or incident.[2] See Hansard v. Johns-Manville Prod. Corp., 5 Fair Empl. Prac. Cas. (BNA) 707, 5 Empl. Prac. Dec. (CCH) ¶8543, 1973 WL 129 (E.D. Tex. 1973) (sincerity of a belief is often judged by how consistently a person has acted with respect to that belief). Indeed, plaintiff did not fail or refuse to work

---

[2] The evidence submitted by JSU conflicts in virtually all relevant respects with the allegations of plaintiff's complaint. In his complaint, plaintiff alleges that he informed Ms. Jackson in his interview that due to his lifelong religious and cultural practice of constant prayer and reading the Koran from 2:00 a.m. to 4:00 a.m., he would be unable to work the midnight shift. He also alleges that during the first four years of his employment, JSU accommodated him by never scheduling him to work the midnight shift. According to the complaint, he was first scheduled for that shift in July 2007. He alleges that he repeatedly requested that JSU return him to his original schedule, for religious reasons, and that it steadfastly refused to do so, even though he, plaintiff, informed JSU of another residence hall receptionist who had indicated a desire to work the midnight shift in his place.
   Plaintiff has offered no evidence whatsoever in support of these allegations, all of which are flatly refuted by JSU's competent summary judgment evidence.

3

the midnight shift until the fall of 2006. At that time, he informed his superiors he would not work the midnight shift, and he began calling in sick or otherwise taking leave time whenever he was scheduled to work the midnight shift.

JSU also notes that plaintiff's explanation of the alleged requirement of his professed religious belief has been inconsistent, which it submits further belies his assertion of a *bona fide* religious belief that conflicted with the requirements of his employment. To the point, JSU notes that whereas plaintiff alleged in his complaint that his religion required that he engage in constant prayer and reading of the Koran from 2:00 a.m. to 4:00 a.m., in an EEOC questionnaire completed in October 2007, plaintiff wrote, "I'm Muslim In my believe I have to pray every day at night time approximately, from 4:00 a.m. to 6:00 a.m., worshiping (Allah) all night." And according to JSU, plaintiff testified in his deposition that he was required to pray "all night" in accord with the dictates of Sura 17: 78-79 of the Koran. As plaintiff has offered no evidence in response to JSU's motion to support his allegation that he held a *bona fide* religious belief that conflicted with his working the midnight shift, the court must conclude that JSU is entitled to summary judgment.[3]

---

[3] JSU has also contended that summary judgment is proper because plaintiff cannot establish that JSU was informed of his claimed religious belief. However, while there is ample evidence that plaintiff did not inform anyone at JSU that his working the midnight shift conflicted with a religious belief until "well into 2007," the record also shows that in October 2007, he filed an EEOC charge against JSU in which he identified the specific

4

JSU contends, alternatively, that even if plaintiff were able to establish that he had a bona fide religious belief which precluded him from ever working a midnight shift, he still cannot prevail because of the undue hardship accommodating this practice would impose on the University and its other employees. While Title VII obligates an employer to make reasonable accommodations for the religious observances of its employees, the employer is not required to incur undue hardship. Weber v. Roadway Exp., Inc., 199 F.3d 270, 272-273 (5th Cir. 2000). Thus, if an employee establishes a prima facie case, the burden shifts

---

religious belief that he claimed prevented his working the midnight shift. Thus, it is manifest that from and after the date of his EEOC charge, JSU had notice of plaintiff's assertion of a religious practice that conflicted with working the midnight shift. However, JSU insinuates that this notice was not sufficient to satisfy plaintiff's prima facie burden, since, despite providing this notice of the claimed religious belief, plaintiff did not specifically inform JSU of the source of his professed belief. In other words, JSU argues that since plaintiff did not include a citation to the chapter (Sura) and verse of the Koran from which his alleged belief was drawn, his notice was insufficient. In the court's opinion, however, particularly in the absence of inquiry by JSU, plaintiff's failure to specify the source of his claimed belief was unnecessary. Obviously, an employer must be given adequate notice of an employee's religious conflict before a religious animus that the statute was designed to prevent can be found to have existed. Thus, where an employee states only vaguely that his religious beliefs prevent him from performing some job-related duty and then further refuses attempts to clarify the employee's belief, the employer has no information to rely on to attempt to accommodate the employee, and therefore cannot be held to have violated Title VII. See Cary v. Carmichael, 908 F. Supp. 1334, 1344 (E.D. Va. 1995). That is not what occurred here, at least from and after the time of plaintiff's EEOC charge in the fall of 2007. See id. (observing that "i[n] the Sabbatarianism cases, the very statement that one cannot work on a particular day because of religion immediately lends itself to accommodation, or at the very least imparts enough understanding to facilitate discussion.").

5

to the employer to show that it was unable to reasonably accommodate the plaintiff's beliefs without undue hardship.  Id.

"'Undue hardship' exists, as a matter of law, when an employer is required to bear more than a de minimis cost."  Id. The Fifth Circuit has recognized that an employer is not required to rearrange its schedule and force employees to "trade shifts" to accommodate the religious practices of an employee, because to impose such a requirement imposes an "undue hardship."  Id.  See also Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977)("It would be anomalous to conclude that by 'religious accommodation' Congress meant that an employer must deny the shift and job preferences of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer religious needs of others, and we conclude that Title VII does not require an employer to go that far"); Brener v. Diagnostic Center Hosp., 671 F.2d 141 (5th Cir. 1982), and Eversley v. MBank Dallas, 843 F.2d 172, 175 (5th Cir. 1988) (finding that an employer is not required to rearrange its neutral scheduling practices to accommodate an employee) (cited in Weber).

JSU argues, and has submitted supporting evidence, that the logistics involved in arranging for other employees to cover plaintiff's assigned midnight shifts would have been significant for JSU, in that plaintiff's supervisor would first have to identify another employee who might be willing to cover

6

plaintiff's midnight shifts, possibly incur overtime expense, and cause other employees to assume a disproportionate workload, all of which would pose an undue hardship as a matter of law on the University. See Weber, 199 F.3d at 274 (observing that "[t]he mere possibility of an adverse impact on coworkers . . . is sufficient to constitute an undue hardship."). JSU explains it did not undertake efforts to arrange such shift swaps between plaintiff and other employees because of the disproportionate workload and administrative complications such arrangements would have posed. Plaintiff has offered no evidence to the contrary, and therefore, the court concludes that JSU is also/alternatively entitled to summary judgment on plaintiff's religious discrimination claim on the basis of its hardship defense.

In addition to his religious discrimination claim, plaintiff has pled a claim of retaliation, based on his allegation that in retaliation for plaintiff's October 2007 EEOC charge of religious discrimination, JSU took certain actions against him, including removing the television from his work station (while other desk receptionists were allowed to have televisions); removing him from two classes in which he was enrolled; and harassing, intimidating and threatening him with termination and ultimately terminating him. To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (i) he engaged in protected activity; (ii) he experienced an adverse employment action following the protected activity; and (iii) a causal link existed between the

7

protected activity and the adverse employment action. Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003); Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). JSU submits that whereas plaintiff can satisfy the first two prongs, he cannot establish a causal link between his filing of an EEOC charge and the challenged employment actions. For the following reasons, the court agrees.

Directing the removal of a television from plaintiff's work station would not constitute an "adverse employment action," which is defined for purposes of a retaliation claim as one that "a reasonable employee would have found ... [to be] materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of [retaliation].'" Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). In any event, plaintiff's EEOC charge was filed October 15, 2007, more than a month *after* he received a memo directing the removal of televisions from the work stations.[4]

According to JSU, in the spring of 2008, five months after plaintiff's EEOC charge, he was removed from two courses in which he had enrolled because, as part of its routine purging process, it determined that plaintiff had failed to complete the registration process. JSU explains that plaintiff was notified of

---

[4] Moreover, while the memo does not appear in the record, as described by plaintiff in the complaint, it was evidently directed to all desk receptionists, not just plaintiff.

8

this failure in advance of his removal from the classes, and given an opportunity to complete the registration process but failed to do so. On the present motion, JSU submits that plaintiff's only basis for asserting that his removal from the class was retaliatory is temporal proximity, which, unless "very close," can never suffice to establish causation. See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) (explaining that "to be persuasive evidence (of causation), temporal proximity must be very close"). Likewise, plaintiff's termination, which he also alleges was retaliatory, lacks "very close" temporal proximity, as it occurred seven months after his EEOC charge. Cf. Ajao v. Bed Bath and Beyond, Inc., 265 Fed.Appx. 258, 265, 2008 WL 345505, 6 (5th Cir. 2008) (holding that "temporal proximity of four months is not close enough"). For these reasons, JSU is entitled to summary judgment on plaintiff's retaliation claim.

Based on the foregoing, it is ordered that JSU's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 27th day of January, 2010.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE